**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re Application of<br><br>FW Deep Value Opportunities Fund I, LLC,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | C.A. No. |

**MEMORANDUM OF LAW IN SUPPORT OF**
***EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**
**TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

ASHBY & GEDDES
Andrew C. Mayo (#5207)
Jeffrey J. Lyons (#6437)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
jlyons@ashbygeddes.com

*Attorneys for Petitioner*

*Of Counsel:*

Fletcher W. Strong
John R. Hein
Jocelyn M. Stuto
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
fstrong@wmd-law.com
jhein@wmd-law.com
jstuto@wmd-law.com

Dated: August 18, 2026

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** .......... 1

**FACTUAL BACKGROUND** .......... 2

A. Relevant Entities .......... 2

B. BidCo's Acquisition of Encavis .......... 3

C. German Appraisal Proceeding .......... 6

**ARGUMENT** .......... 8

I. THE APPLICATION SATISFIES THE STATUTORY PREREQUISITES OF 28 U.S.C. § 1782 .......... 8

A. Respondents "Reside" or are "Found In" This District .......... 8

B. The Requested Discovery Is "For Use" in Foreign Proceeding .......... 9

C. Petitioner Is An "Interested Person" .......... 10

II. THE *INTEL* DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY .......... 10

A. KKR is Not a Party to German Appraisal Proceeding and German Court Cannot Compel Discovery From KKR .......... 11

B. The German Court Will Be Receptive to the Requested Discovery .......... 12

C. Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions .......... 14

D. The Subpoenas are Not Unduly Burdensome .......... 15

**CONCLUSION** .......... 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Azima v. Citibank, N.A.*,
2022 WL 1287938 (S.D.N.Y. Apr. 29, 2022) ... 17

*Biomet Orthopaedics Switz. GMBH*,
742 F. App'x 690 (3d Cir. 2018) ... 10, 11, 13, 18

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) ... 12

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) ... 11

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017) ... 9

*In re Application of California State Teachers' Retirement System,*
2016 WL 7477753 (D.N.J. Dec. 28, 2016) ... 11

*In re Application of financialright claims GmbH*,
2024 WL 4818177 (D. Del. Nov. 18, 2024) ... 10

*In re Bayer*,
146 F.3d 188 (3d Cir. 1998) ... *passim*

*In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782,*
2021 WL 1063390 (D. Del. Mar. 19, 2021) ... 9

*In re FourWorld Cap. Mgmt. LLC*,
2024 WL 1637400 (D. Del. Apr. 16, 2024) ... 11, 12, 17

*In re Gemeinschaftspraxis Dr. Med. Schottdoif*,
2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ... 14

*In re Hansainvest Hanseatische Investment-GmbH*,
364 F.Supp.3d 243 (S.D.N.Y. 2018) ... 11

*In re Liverpool Ltd. P'ship*,
2021 WL 3793901 (D. Del. Aug. 26, 2021) ... 8, 9, 17

*In re Man Grp. Ltd.*,
2025 WL 846134 (S.D.N.Y. Mar. 13, 2025) ... 17

*In re Mun*,
2023 WL 7074016 (D. Del. Oct. 26, 2023) .......... 12

*In re O'Keeffe*,
646 F. App'x 263 (3d Cir. 2016) .......... 9, 11, 12, 14

*In re O'Keeffe*,
2015 WL 540238 (D.N.J. Feb. 10, 2015) .......... 12

*In re Petronas Azerbaijan (Shah Deniz) S.a.r.l*,
2025 WL 1836446 (D. Del. July 3, 2025) .......... 18

*In re Porsche Automobil Holding S.E.*,
2021 WL 2530277 (S.D.N.Y. June 21, 2021) .......... 11

*In re Request From Vienna*,
2023 WL 6278815 (D. Del. Sept. 26, 2023) .......... 8

*In re Selman*,
2024 WL 1092025 (D. Del. Mar. 13, 2024) .......... 15

*Intel Corp. v. Advanced Micro Devices*, *Inc.*,
542 U.S. 241 (2004) .......... *passim*

*Kulzer v. Esschem, Inc.*,
390 F. App'x 88 (3d Cir. 2010) .......... 11, 13

*Matter of Dos Santos*,
2024 WL 1006259 (D.N.J. Mar. 8, 2024) .......... 13

*Via Vadis Controlling GmbH v. Skype*,
2013 WL 646236 (D. Del. Feb. 21, 2013) .......... 8

**Statutory Authority**

28 U.S.C. § 1782 .......... *passim*

Fed. R. Civ. P. 26 .......... 15

FW Deep Value Opportunities Fund I, LLC ("Petitioner") respectfully submits this memorandum of law, together with the Declaration of Fletcher W. Strong ("Strong Declaration") and Declaration of Dr. Heinz-Peter Mansel ("Mansel Declaration"), in support of Petitioner's *ex parte* application for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") to issue a document and deposition subpoena to Kohlberg Kravis Roberts & Co. L.P. and KKR & Co. Inc. (together, "KKR" or "Respondents") for use in a judicial proceeding pending in Germany.

## PRELIMINARY STATEMENT

This Section 1782 application (the "Application") seeks an order authorizing Petitioner to subpoena KKR for limited discovery concerning the value of Encavis AG ("Encavis"), a producer of electricity from renewable energy based in Germany, as well as related topics. Petitioner will use this discovery in an appraisal proceeding pending in the Hamburg Regional Court, Chamber for Commerial Matters (the "German Appraisal Proceeding") in which Petitioner seeks a determination of the fair value of Encavis and Petitioner's Encavis shares. The German Appraisal Proceeding relates to Encavis's acquisition by KKR through Elbe BidCo AG ("BidCo"), a holding company controlled by investment funds, vehicles, and accounts advised and managed by KKR, and the subsequent merger squeeze-out of minority shareholders in Encavis, including Petitioner.

The Application satisfies the statutory prerequisites of 28 U.S.C. § 1782(a) that authorize this Court to grant the requested discovery for use in a foreign proceeding. The Application also satisfies each of the four factors set forth by the Supreme Court to assist courts in exercising its discretion in granting the requested discovery: (1) Respondents are non-participants in the German Appraisal Proceeding and may not be compelled to produce discovery or other information in Germany; (2) there is no indication that the German court would not be receptive to receiving the information; to the contrary, the information sought regarding the valuation of Encavis is directly

relevant to the issues being adjudicated in the German Appraisal Proceeding; (3) the Application is not an attempt to circumvent German proof-gathering restrictions; and (4) Respondents' production of documents responsive to Petitioner's five document requests and five deposition topics in the subpoenas related to the valuation of Encavis and its stock does not constitute an undue burden. *Intel Corp. v. Advanced Micro Devices*, *Inc.*, 542 U.S. 241, 244-45 (2004).

Accordingly, Petitioner respectfully requests that the Court grant the Application and permit the issuance of the proposed subpoenas upon KKR, which are attached to the Strong Declaration as Exhibit A and Exhibit B (the "Subpoenas").

## FACTUAL BACKGROUND

### A. Relevant Entities

Petitioner is an investment fund incorporated in Delaware that was a shareholder of 492,370 registered shares of Encavis. *See* Strong Decl. Ex. E at 1, 4. Petitioner is a party to the German Appraisal Proceeding regarding the valuation of Petitioner's shares in Encavis following its acquisition by BidCo.

Encavis, based in Hamburg, Germany, is a leading independent power producer that acquires and operates wind and solar parks across several different countries. *See* Strong Decl. Ex. F at 8. Encavis was a publicly listed company before BidCo delisted the company's shares following a takeover of Encavis at €17.50 per share. Strong Decl. Ex. E at 3.

BidCo is a stock corporation incorporated under the laws of Germany, with its registered office in Munich, Germany. *See* Strong Decl. Ex. E at 2. BidCo is a holding company controlled by investment funds, vehicles, and accounts advised and managed by KKR. *Id.* at 3. On November 3, 2025, BidCo's name was changed from Elbe BidCo AG to Elbe BidCo GmbH, with its registered office in Munich, Germany. *Id.*

Kohlberg Kravis Roberts & Co. L.P. is a Delaware company with a registered office in Wilmington, Delaware. *See* Strong Decl. Ex. C.

KKR & Co. Inc. is a Delaware corporation publicly traded on the New York Stock Exchange (ticker symbol: KKR), with a registered office in Wilmington, Delaware. *See* Strong Decl. Ex. D.

**B. BidCo's Acquisition of Encavis**

On March 14, 2024, Encavis issued a press release announcing it had entered into an investment agreement with BidCo, "a holding company controlled by investment funds, vehicles and accounts advised and managed by Kohlberg Kravis Roberts & Co. L.P. and its affiliates[.]" *See* Strong Decl. Ex. G at 4. Additionally, the press release announced the plans of ViessmannGmbH & Co. KG's ("Viessmann") to also invest in Encavis "as co-investor in a KKR-led consortium." *Id.*

Contemporaneously, BidCo announced its intention to launch a voluntary public takeover offer to Encavis shareholders at a price of €17.50 per share in cash (the "Offer") "representing an attractive premium of 54 percent to the undisturbed closing share price and 33 percent to the undisturbed three-month volume-weighted average share price [(the "VWAP")] – both as of 5 March 2024." *Id.* at 3. On April 24, 2024, in connection with KKR's intended acquisition of Encavis through BidCo, BidCo issued the *Offer Document - Voluntary Public Takeover Offer (Cash Offer)* (the "Offer Document") to acquire Encavis shares. Strong Decl. Ex. H. Pursuant to the Offer Document, BidCo offered €17.50 in cash per share in Encavis, with the acceptance period ending on May 29, 2024.

The Offer Document detailed an agreement entered into between BidCo and other large Encavis shareholders (the "Pool and Friends Shareholders") prior to the announcement of the Offer

that effectuated the sale, roll-over, and transfer of Encavis shares to BidCo (the "Pool and Friends Framework Agreement"). The Pool and Friends Framework Agreement provided that "Contributing Pool and Friends Shareholders," who together held approximately 31.35% of Encavis's share capital, were able to "roll over" their existing Encavis equity into BidCo. Strong Decl. Ex. H at 22, 46. The participating "Selling Pool and Friends Shareholders," who together held 18.11% of Encavis's outstanding shares, sold and transferred their shares to BidCo in exchange for a payment of €17.50 per share. *Id.* at 45. The Contributing Pool and Friends Shareholders then transferred their remaining shares, representing 13.24% of Encavis's outstanding shares, in exchange for new shares in BidCo. *Id* at 46-47.

The Offer Document also stated that prior to launching the Offer, the Bidder conducted due diligence into Encavis. Pursuant to this due diligence review, Encavis granted the KKR affiliate access to a data room containing relevant Encavis documents:

> [T]he Bidder and its advisors were granted staggered access in a virtual data room to certain documents regarding the Encavis Group's legal, financial, and operational situation, whereas the access to information was increased with the advancement of negotiations. In addition, representatives of the Bidder and its advisors repeatedly held talks with Encavis' management, in addition to expert sessions with representatives of Encavis.

Strong Decl. Ex. H at 5. Accordingly, through the Bidder, KKR had access to "financial" and "operational" materials of Encavis.

At the time of the Offer, KKR also agreed to provide financing to Encavis. As detailed in the Offer Document, on March 14, 2024, funds associated with KKR (the "KKR Funds") agreed to contribute up to €800,000,000 to Encavis upon Encavis's request. Strong Decl. Ex. H at 83.

In connection with the Offer, BidCo hired Alvarez & Marsal Deutschland GmbH, Munich, ("A&M") as an "independent" valuation expert to assess the value of the offer price. A&M's

affiliate, Alvarez & Marsal GmbH Wirtschaftsprüfungsgesellschaft, previously served as the auditors of the 2017 merger squeeze out of Chorus Clean Energy by Capital Stage AG; Chorus Clean Energy was renamed Encavis in 2018. *See generally* Strong Decl. Ex. I. In its valuation report for the 2024 Offer, A&M calculated a value of Encavis at €2,221 million, corresponding to €13.73 per share. Strong Decl. Ex. E at 5. Therefore, A&M concluded that "the market value of the consideration granted by the Bidder as part of the Roll-over and agreed as part of the capital increase against contribution in kind did not exceed [€]17.50 per Encavis Share." Strong Decl. Ex. J at 26.

As is required under German law, in reaching its conclusion, A&M represented that it acted in accordance with the standard "Principles for Conducting Business Valuations (IDW S 1 as amended in 2008)" issued by the Institute of Public Auditors in Germany. Mansel Decl. ¶¶ 10-11. A court-appointed fairness reviewer, RSM Ebner Stolz GmbH & Co. KG Wirtschaftsprüfungsgesellschaft Steuerberatungsgesellschaft ("Ebner Stolz") certified the fairness of the buy-out price. Mansel Decl. ¶ 12.

On September 12, 2025, Encavis announced that all Encavis minority shareholders that did not accept the Offer were subject to a merger squeeze-out (the "Squeeze Out") and would receive a cash settlement of €17.23 for their shares. *See* Strong Decl. Ex. K at 3. Petitioner, along with other Encavis minority shareholders, was forced to relinquish its Encavis shares pursuant to the Squeeze Out. The €17.23 Squeeze Out price imposed upon minority shareholders like Petitioner was less than the €17.50 Offer price.

### C. German Appraisal Proceeding

On December 10, 2025, Petitioner and other minority shareholders of Encavis submitted the Writ to the Hamburg Regional Court, Chamber for Commercial Matters (the "German Court"), challenging the €17.23 per share valuation of Encavis. Strong Decl. Ex. E.

The Writ challenged the valuation on several grounds. For example, the Writ provided evidence that the Offer price was undervalued. The Writ highlighted that it would be against the economic interests of existing shareholders of Encavis to voluntarily accept equity in the new company and "roll over" their shares, as opposed to accepting the €17.50 per share Offer price, unless the rollover shareholders knew that valuation to be artificially low. Therefore, the Writ explained, the existence of rollover shareholders indicated that the Offer price represented an undervaluation of Encavis, as "[s]uch a rollover by existing shareholders in the context of a takeover always argues against the suitability of the stock market price as a valuation method and in favor of a critical review of the company valuation." Strong Decl. Ex. E at 11.

Further, German auditing principles required synergies to be taken into account in the valuation, but as set forth in the Writ, such synergies were largely ignored, further leading to the undervaluation of Encavis's share price. According to the Writ, the auditing standard A&M was followed when valuating Encavis mandates an analysis of the entire group of companies with an ownership interest, not just any individual entity:

> The economic interaction of two or more companies (economic group) can lead to positive or negative changes in future success, so that the future success expected in the group may differ from the sum of the respective isolated (stand-alone) future successes. If an economic group has already been established on the valuation date, the expected future success of this group must be taken into account by the neutral expert or appraiser as part of future success planning and its plausibility assessment
>
> . . .

> Since synergies can only be realized jointly, it is not relevant where in the economic group the synergies actually arise. Rather, the synergies must be allocated appropriately. The allocation of synergies must be carried out by the neutral appraiser or expert on a case-by-case basis using comprehensible criteria and taking into account the economic and legal framework conditions. Internal factors (including management planning and its documentation) and external factors (e.g., capital market, takeover premiums, negotiated solutions) must be taken into account.

Strong Decl. Ex. E at 48-49 (citing IDW ES 1 n.F).

As set forth in the Writ, at the time of A&M's valuation of Encavis, KKR had already agreed to and granted financing to Encavis and had been closely involved in the planning process for the new company. Strong Decl. Ex. E at 46-48. KKR also specifically referred to the technological expertise of its own portfolio companies, as it already had extensive holdings in Encavis's line of business. *Id.* at 46. Because KKR had "global framework agreements for services, technology and hardware, software, vehicles, and other procurement, from which all portfolio companies benefit," KKR had clear purchasing advantages that should have been taken into account in the valuation. *Id.* at 47. German auditing principles required A&M to consider KKR's synergies in the valuation of Encavis, but A&M failed to do so. At the annual general meeting of the former Encavis shareholders, held on July 16, 2025, Petitioner inquired about what synergies were applied to the valuation. While Petitioner was told that there were working groups of KKR and Encavis employees meeting to identify which synergies to consider, "[s]pecific answers regarding synergies through KKR framework agreements were refused[.]" *Id.* at 48.

An oral hearing before the German Court is not expected to take place this year.

# ARGUMENT

## I. THE APPLICATION SATISFIES THE STATUTORY PREREQUISITES OF 28 U.S.C. § 1782

Section 1782 authorizes United States district courts to grant discovery for use in a foreign proceeding where three "modest prima facie elements" are satisfied: (1) the discovery is sought from a person that "resides or is found" within the district; (2) the discovery is "for use" before a foreign tribunal; and (3) the applicant is an "interested person." 28 U.S.C. § 1782; *Intel*, 542 U.S. at 247 (2004); *In re Bayer*, 146 F.3d 188, 193, 195 (3d Cir. 1998). Petitioner's Application prima facie satisfies each of these statutory requirements.

### A. Respondents "Reside" or are "Found In" This District

Section 1782's requirement that an entity "reside or be found" in a district is satisfied when an entity is incorporated or organized in the district. *In re Liverpool Ltd. P'ship*, 2021 WL 3793901, at *1 (D. Del. Aug. 26, 2021); *Via Vadis Controlling GmbH v. Skype*, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013). Both Respondents are incorporated or organized in Delaware and thus are "found" or "reside" in this District for purposes of Section 1782. *See* Strong Decl. Ex. C, Ex. D.

It is irrelevant whether the *documents* requested are located in this District or elsewhere. *See In re Request From Vienna*, 2023 WL 6278815, at *3 (D. Del. Sept. 26, 2023) ("Section 1782 requires that *the person* from whom documents are sought reside or be found in the district. It does not require that *the documents* be maintained or found in the district.") (emphasis in original). So it matters not to the analysis that the underlying transaction involved the acquisition of a German company (Encavis) by another German company (BidCo) after due diligence sessions and meetings between corporate executives that presumably occurred in Germany. As long as the

Respondents have possession, custody, or control over the requested documents, wherever the documents may be located, they must be produced. *Id.*; *Liverpool*, 2021 WL 3793901, at *1.

**B. The Requested Discovery Is "For Use" in Foreign Proceeding**

To establish that the information sought is "for use" in a foreign proceeding, Petitioner need only show that it has "the procedural right to submit the requested documents to" the foreign tribunal. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). Petitioner does not need to prove that the German Court will determine that the documents are admissible in the foreign proceeding. *In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016). Indeed, it "would contradict the express purpose of section 1782 if the American court were required to predict the actions of another country's tribunal." *In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782*, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021) (quoting *Bayer*, 146 F.3d at 192); *see also id.* ("Respondents' arguments about the ultimate admissibility and relevance of Respondents' documents do not show that the requested discovery would not be 'for use' in the Italian proceedings under § 1782.").

Here, the Subpoenas to KKR seeks discovery focused on the valuation of Encavis and its stock, as well as the transactions giving rise to BidCo's acquisition of Encavis, which is the focus of the pending German Appraisal Proceeding. *See generally* Strong Decl. Ex. A, Ex. B. Therefore, such discovery will be relevant and "for use" in the German Court. *See* Mansel Decl. ¶¶ 14, 17-18. Moreover, there is nothing in German law generally or any specific orders in the pending German Appraisal Proceeding that would preclude such information. *Id.* ¶¶ 20-21. To the contrary, the German Court would likely admit and potentially rely on any additional information provided that may aid it in the ultimate adjudication of the parties' dispute. *Id.*

### C. Petitioner Is An "Interested Person"

"Litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *In re Application of financialright claims GmbH*, 2024 WL 4818177, at *7 (D. Del. Nov. 18, 2024) (a litigant to the foreign tribunal is an "interested person" under § 1782). Because Petitioner is a party to the German Appraisal Proceeding in the German Court, Mansel Decl. ¶ 5, Petitioner is an "interested person."

## II. THE *INTEL* DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY

Where, as here, the statutory requirements are met, the Court may consider four discretionary *Intel* factors in determining whether to grant a Section 1782 request: (1) whether the Section 1782 discovery target is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. Courts apply these factors in support of Section 1782(a)'s "'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Application of Biomet Orthopaedics Switz. GMBH*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 252).

All of the discretionary *Intel* factors weigh in favor of granting the Application.

### A. KKR is Not a Party to German Appraisal Proceeding and German Court Cannot Compel Discovery From KKR

KKR is not a party to the German Appraisal Proceeding. Mansel Decl. ¶¶ 6-7; Strong Decl. Ex. E at 1-2. Notwithstanding that KKR is an affiliate of BidCo, KKR is outside the jurisdictional reach of the German Court. Mansel Decl. ¶¶ 6-7; *see also In re Application of California State Teachers' Retirement Sys.,* 2016 WL 7477753, at *3 (D.N.J. Dec. 28, 2016) (German courts lack jurisdiction to order nonparties to produce discovery); *In re Porsche Automobil Holding S.E.*, 2021 WL 2530277, at *7 n.7 (S.D.N.Y. June 21, 2021) (same); *see also In re FourWorld Cap. Mgmt. LLC*, 2024 WL 1637400, at *4 (D. Del. Apr. 16, 2024) (holding that primary inquiry is whether the respondents themselves are participants, not whether requested discovery is also available to any party to foreign proceeding). Because Respondents are not participants in the foreign litigation and are outside the foreign tribunal's jurisdictional reach, the first *Intel* factor favors compelling discovery. *In re O'Keeffe*, 646 F. App'x at 266.

Moreover, as the Third Circuit has recognized, "German civil procedure does not offer a mechanism for general pretrial discovery comparable to that obtainable in the United States; any request to the German court must be for *specific* documents, and without access to [the third-party discovery target's] files, [the petitioner] cannot pinpoint what it is seeking; and the German court has no jurisdiction over a non-party[.]" *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010); *see also In re Biomet Orthopaedics*, 742 F. App'x at 696 ("A party to a German lawsuit cannot demand categories of documents from his opponent. All he can demand are documents that he is able to identify specifically—individually, not by category.") (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 596 (7th Cir. 2011)); *In re Hansainvest Hanseatische Investment-GmbH*, 364 F.Supp.3d 243, 250 (S.D.N.Y. 2018) (first *Intel* factor favored petitioner even if requested information was held by party to German litigation because of limited discovery

available under German discovery rules). In the pending German Appraisal Proceeding, this reality of German civil procedure applies. Mansel Decl. ¶ 19 ("Any request for documents made to the German Court must be for specific and identifiable documents.").

Therefore, the German Court cannot compel KKR to produce the discovery sought and the first *Intel* factor favors Petitioner.

**B. The German Court Will Be Receptive to the Requested Discovery**

The second *Intel* factor instructs courts to consider whether the nature, attitude, and procedures of the foreign tribunal indicate that it would be "receptive" to Section 1782 assistance. *Intel*, 542 U.S. at 264; *In re O'Keeffe*, 646 F. App'x at 266. For purposes of Section 1782, a foreign tribunal's "receptivity" involves "not whether particular evidence would be admissible in the foreign court, but instead more generally whether the foreign court is receptive to U.S. federal court assistance." *In re Mun*, 2023 WL 7074016, at *4 (D. Del. Oct. 26, 2023). Courts, including those in this District, have recognized that in determining the receptivity of foreign courts to Section 1782 discovery, district courts should avoid "speculative forays into legal territories unfamiliar to federal judges." *In re FourWorld*, 2024 WL 1637400, at *8 (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995)). The party opposing the discovery request bears the burden of persuading the Court, with "authoritative proof," that the foreign tribunals would reject the discovery sought by the Section 1782 order. *In re O'Keeffe*, 2015 WL 540238, at *4 (D.N.J. Feb. 10, 2015). Examples of such authoritative proof include "'a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures.'" *In re O'Keeffe*, 646 F. App'x at 266 (quoting *Euromepa*, 51 F.3d at 1100).

Here, the German Court has not provided any indication that it would be unreceptive to evidence obtained pursuant to Section 1782. Mansel Decl. ¶ 20. U.S. courts have repeatedly granted Section 1782 applications to obtain discovery for use in the German judicial system because of the noted *lack* of any evidence of such hostility. *See, e.g.*, *Esschem*, 390 F. App'x at 93 (vacating district court's denial of Section 1782 petition and remanding with instructions to grant discovery where German court had not specifically refused evidence sought); *Matter of Dos Santos*, 2024 WL 1006259, at *5 (D.N.J. Mar. 8, 2024) ("binding Third Circuit law has found German courts to be receptive to Section 1782 discovery"), *appeal dismissed sub nom*, *In re Dos Santos*, 2024 WL 5515532 (3d Cir. Dec. 9, 2024). In fact, the Third Circuit has noted that German courts have *cited documents applicants have obtained through Section 1782 applications* in German judicial proceedings, underscoring the German judiciary's receptivity to discovery obtained through Section 1782. *See In re Biomet Orthopaedics*, 742 F. App'x at 698 ("it is undisputed that the German Court had cited documents . . . obtained with § 1782's aid in the German Judgment at stage one, and so it would appear that the German Court would not be offended by a similar U.S.-style discovery submission"); *id.* (emphasizing that Section 1782 applicant "did not need to show that the German court would gladly receive a large volume of documents; it only needed to establish that the court was generally 'receptive to [American] judicial assistance'") (citation omitted).

Accordingly, given the absence of any evidence that the German Court would not be receptive to the discovery sought, much less "authoritative proof" that the German Court would be unreceptive, the second *Intel* factor favors Petitioner.

### C. Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. It is permissible for a Section 1782 petitioner to seek "to acquire discovery that it was unable to obtain abroad[] . . . because, in some respects, that is precisely the type of assistance that the statute was designed to afford." *In re Gemeinschaftspraxis Dr. Med. Schottdoif*, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006); *see also Bayer*, 146 F.3d at 195 (holding "the lack of a finding of discoverability is an inadequate basis on which to deny a § 1782 application" because "if district courts were free to refuse discovery based upon its unavailability in a foreign court . . . § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes"). As such, there is no "exhaustion requirement," such that Section 1782 does not require that a petitioner first seek discovery in a foreign proceeding before filing a Section 1782 application. *Id.* at 195-96 (rejecting argument that application should be denied when applicant could have gone to foreign court to seek production of materials before filing Section 1782 action); *In re O'Keeffe*, 646 F. App'x at 268 ("We have never held that an applicant must seek discovery relief in the foreign forum first."). Because "relevant evidence is presumptively discoverable under § 1782," the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner from gathering the information sought. *Bayer*, 146 F.3d at 196.

Here, the discovery sought does not attempt to circumvent any proof-gathering restrictions in the German Court. Instead, Petitioner seeks good-faith discovery directly related to the issues being adjudicated in the German Appraisal Proceeding. Respondents are not parties to the German Appraisal Proceeding and not subject to the jurisdiction of the German Court. Mansel Decl. ¶¶ 6-7. According to the Offer Document, KKR obtained unique information regarding Encavis's

financial and operational situation when BidCo was given access to the virtual data room and conducted meetings with Encavis's management. Strong Decl. Ex. H at 5. Far from circumventing any German proof-gathering restrictions, Petitioner's Application seeks to assist the German Court's determination of the fair value of Encavis and Petitioner's Encavis shares.

**D. The Subpoenas are Not Unduly Burdensome**

The final *Intel* factor instructs courts to consider whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standards for discovery under the Federal Rules apply to Section 1782 requests. *Bayer*, 146 F.3d at 195. As a result, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," to the extent that it does not cause undue burden or expense. Fed. R. Civ. P. 26(b)(1). In considering this factor, "the Court asks whether, as in a Rule 26 inquiry, the discovery requested is relevant to any party's claim or defense and proportional to the needs of the case." *In re Selman*, 2024 WL 1092025, at *8 (D. Del. Mar. 13, 2024).

Here, the discovery Petitioner seeks is narrowly tailored, in scope and time, to the issues pending in the German Appraisal Proceeding. As detailed in the Offer Document, Encavis granted KKR unique and exclusive information regarding Encavis's affairs, finances, and operational condition—information highly relevant to assessing the fair value of Encavis and its stock—via a virtual data room, and KKR conducted meetings with Encavis's management as part of negotiations relating to BidCo's acquisition of Encavis. Strong Decl. Ex. H at 5.

As set forth in the proposed Subpoenas attached to the Strong Declaration as Exhibit A and Exhibit B, each of the five deposition topics and document requests concerns information directly relevant to the issues being adjudicated in the German Appraisal Proceeding:

- KKR's due diligence of Encavis (Deposition Topic No. 1; Request No. 1);
- The valuation of Encavis or its stock, including in connection with the Offer, corporate transactions giving rise to KKR's acquisition of Encavis through BidCo, and the Squeeze Out (Deposition Topic No. 2; Request No. 2);
- The impact of BidCo's acquisition of Encavis on the compensation packages received by Encavis's board of directors and employees, including any acceleration of any compensation or option packages as a result (Deposition Topic No. 3; Request No. 3);
- Events relating to the acquisition of Encavis, including the related transactions (Deposition Topic No. 4; Request No. 4); and
- The consideration of synergies between KKR and Encavis in connection with the Offer and KKR's valuation and acquisition of Encavis (Deposition Topic No. 5; Document Request No. 5).

Strong Decl. Ex. A, Ex. B. Thus, the topics are facially relevant and narrowly tailored to the issues being adjudicated in the German Appraisal Proceeding concerning the fair value of Encavis, which considers, among other things, the internal analyses and corporate transactions giving rise to KKR's acquisition of Encavis through BidCo and the squeeze out of Encavis shareholders. *See* Mansel Decl. ¶¶ 17-18.

The relevant time period applicable to the Subpoenas is limited in scope and directly relevant to the discovery requested. The start date, September 1, 2023, is approximately two months before KKR and its advisors began officially performing due diligence on Encavis. Strong Decl. Ex. H at 5. The end date, December 31, 2025, is 21 days after Petitioner and other objecting minority shareholders of Encavis submitted the Writ in the German Court. Strong Decl. Ex. E.

The subpoena topics—which relate to KKR's due diligence on, and completion of, the corporate acquisition subject of the requested discovery, with an end date just 21 days after the foreign action commenced—are both facially narrow and directly relevant to the underlying transaction. *See, e.g.*, *In re FourWorld Capital Management LLC*, 2024 WL 1637400, at *9 (D. Del. Apr. 16, 2024) (ruling that Section 1782 document requests spanning the period relevant to respondent's review of takeover bid was reasonable under the circumstances). Additionally, the overall time period applicable to the Subpoenas, which is approximately two years and three months, is well within the range of time periods applicable to Section 1782 applications that have been approved. *In re Man Grp. Ltd.*, 2025 WL 846134, at *8 (S.D.N.Y. Mar. 13, 2025) (26 year time period not unduly burdensome); *Azima v. Citibank, N.A.*, 2022 WL 1287938, at *2 n.2 (S.D.N.Y. Apr. 29, 2022) (seven years not unduly burdensome).

In an analogous Section 1782 proceeding in this District, Chief Judge Connolly considered a Section 1782 application brought by a dissenting shareholder seeking discovery relevant to a Japanese appraisal proceeding. *Liverpool*, 2021 WL 3793901, at *1. The petitioner sought discovery from Bank of America's Japanese subsidiary that acted as a financial advisor on the transaction. *Id*. at *2. Bank of America argued that the requests were unduly burdensome because "Petitioner broadly lists every category of conceivable relevance to the LINE transaction[.]" *Id*. Chief Judge Connolly rejected Bank of America's arguments because although the requests were broad, the scope was "reasonable given the nature of and BofA Securities' role in the transactions at issue in the appraisal action." *Id*. at *3. Similarly here, KKR had a central role in the transactions, was represented in the Offer Document and press releases as the relevant party that gained access to the Encavis due diligence, and KKR coordinated with the relevant Encavis management and experts in connection with BidCo's acquisition of Encavis. Moreover, KKR or

its affiliates agreed to provide up to €800,000,000 in financing for the acquisition and is now the indirect parent of Encavis through BidCo.

Finally, even though the Application seeks *ex parte* relief, Petitioner is willing to meet and confer with Respondents to address any particular burden concerns that Respondents may raise. *In re Biomet Orthopaedics*, 742 F. App'x at 699 (finding that it "was erroneous 'to turn down [the petitioner's] discovery request flat . . . without requiring [the respondent] to negotiate with [the petitioner] over cutting down the request'") (citation omitted). If any such concerns cannot be resolved consensually, Respondents will still retain the right to move to quash or modify the discovery sought. Courts in this District routinely grant *ex parte* Section 1782 applications where, as here, the statutory and discretionary *Intel* factors have been satisfied. *See, e.g.*, *In re Petronas Azerbaijan (Shah Deniz) S.a.r.l*, 2025 WL 1836446, at *2 (D. Del. July 3, 2025); Order Granting *Ex Parte* 1782 Application in *In re Application of FourWorld Event Opportunities LP* (D. Del. Dec. 16, 2025), annexed to the Strong Decl. as Exhibit L; Order Granting *Ex Parte* 1782 Application in *FourWorld Event Opportunities, LP, et al. v. Mercury Capital Advisors*, (D. Del. Jan. 12, 2023), annexed to Strong Decl. as Exhibit M. Accordingly, the Application should be granted.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court grant its Application pursuant to 28 U.S.C. § 1782 to seek the requested discovery from the Respondents.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

Andrew C. Mayo (#5207)
Jeffrey J. Lyons (#6437)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
jlyons@ashbygeddes.com

*Attorneys for Petitioner*

*Of Counsel*

Fletcher W. Strong
John R. Hein
Jocelyn M. Stuto
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
(212) 382-3300
fsrong@wmd-law.com
jstuto@wmd-law.com
nservider@wmd-law.com

Dated: August 18, 2026